# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

DAVID MAUS and MARK ORNSTEIN,

        **Plaintiffs,**

-vs-                               **Case No.  6:10-cv-1904-Orl-31DAB**

JOHN PATRICK ENNIS,  a/k/a THE
HONORABLE DR. RABBI SOLLOG
IMMANUEL ADONAI-ADONI, a/k/a GOD,

        **Defendant.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       This cause came on for consideration upon evidentiary hearing and oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT (Doc. No. 110)** |
| **FILED:** | **January 6, 2012** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED, in part and DENIED, in part, as set forth herein**.

*Background*

       The matter comes before the Court following entry of an Order Adopting Report and Recommendation and Granting Motion for Sanctions (Doc. No. 108) and the Clerk's subsequent Entry of Default (Doc. No. 109).  By way of relevant background, on December 21, 2010, Plaintiff David Maus filed a two count Complaint against Defendant John Patrick Ennis, alleging violation of the Anticybersquatting Consumer Protection Act and state law claims of Invasion of Privacy/Unauthorized Appropriation of Name (Doc. No. 1).  The Complaint was amended to add the

claims of Plaintiff Mark Ornstein (Doc. No. 9). The dispute involves a number of domain names that incorporate the names of one or the other of the Plaintiffs.

Defendant, appearing *pro se*, filed a motion to dismiss raising various grounds, and included a statement in which he referred to himself as "The Honorable Dr. Rabbi Sollog Immanuel Adonai-Adoni aka GOD known as John Patrick Ennis in this action" and claimed that "anyone calling the defendant John Patrick Ennis is insulting the defendant and also insulting thousands of members around the world whom belong to The Nation and Temple of 'Hayah, the religious organization for which the defendant is the Chief Justice of the Supreme Counsel of the Nation and the Temple of 'Hayah." (Doc. No. 12 at 1). The Court denied the motion to dismiss (Doc. No. 16), and Defendant filed an Answer, denying the allegations of the Amended Complaint (Doc. No. 18). Shortly thereafter, a motion for summary judgment was filed by Defendant (Doc. No 23). The motion was promptly denied, as lacking merit (Doc. No. 24).

Defendant next filed a Motion to Reconsider Order and Motion to Order Use of Defendants [sic] Religious Name Only (Doc. No. 28). Defendant stated that he may be referred to as either Sollog, Mr. Adoni or GOD, and advised that "those are the ONLY NAMES he will answer to. . ." *Id.* Defendant accused the Court of acting with "absolute bigotry" and disrespect toward his religious beliefs, and threatened both counsel and the Court with prosecution for "HATE CRIMES" for continued use of his "birth name." *Id.* Shortly thereafter, Defendant filed a Motion to Recuse the District Judge, for prejudice and bigotry, as well as "complete IGNORANCE and INCOMPETENCY in regards to the true international rules and laws that govern matters that deal with domain names . . . " (Doc. No. 29). The Court denied the Motion to Reconsider, noting that in addition to his legal name, Defendant's religious names were included in the caption of the suit (Doc. No. 32), and denied the motion for recusal (Doc. No. 33).

Next, Plaintiffs moved for sanctions against Defendant (Doc. No. 35), claiming that Defendant was publicly insulting counsel and posting inaccurate reports of the litigation on the Internet. While that motion was pending, Defendant filed another motion for summary judgment, "due to newly discovered proof of perjury" (Doc. No. 37), and a Notice to the Court (Doc. No. 40), in which he stated that he had filed a complaint of religious hate crimes against the district judge and Plaintiff Ornstein with the Supreme Council of Temple of 'Hayah and "both the Hon. Gregory A. Presnell and Mark Ornstein have been found GUILTY of Religious Hate Crimes upon the defendant and all members of TOH" (Doc. No. 40). Defendant attached two papers to his Notice, which he asserted are Orders of the Supreme Council, directing Judge Presnell to recuse and Ornstein to "have NO CONTACT with [Defendant] . . . by email, phone, letter or in person." (Doc. No. 40-1). Another motion to recuse followed (Doc. No. 41), which the Court denied (Doc. No. 47).

Undeterred, Defendant made additional filings, including yet another motion to recuse (Doc. No. 51), this time asserting that he had pled a civil rights cause of action against the judge and the law firm representing the Plaintiffs. The Court found the civil rights claims to be "ludicrous on their face" and denied the motion for recusal (Doc. No. 53). In so doing, the Court noted that all three motions for recusal were frivolous and "any further such motions will result in sanctions." *Id.*

Meanwhile, Plaintiffs moved to amend the complaint (Doc. No. 43) and, upon leave of Court, the Second Amended Complaint was filed (Doc. No. 58). The nature of the claims remained the same, with Plaintiffs contending that the Defendant "knowingly purchased or acquired" the domain names "despite having no legitimate business reason for doing so." (Doc. No. 58 at 2-3). Defendant filed an Answer, Counterclaim and Third Party Complaint (Doc. No. 59, 60). The Counterclaim identified Defendant and two additional entities (Adoni International Services, Inc. and Temple of 'Hayah Aka Toh) as counterclaimants, and numerous additional non-parties as counterclaim defendants (Doc. No. 59 at p. 1). Plaintiffs moved to strike the Counterclaim and Third Party Claim

(Doc. No. 61). The Court granted this motion to the extent the pleading set forth anything other than a denial of the allegations of the Second Amended Complaint by the sole *pro se* Defendant, and affirmative defenses or Counterclaim by the sole Defendant against the two Plaintiffs (Doc. Nos. 63, 65).[1] Plaintiffs then successfully moved to dismiss the Counterclaim (Doc. No. 68, 84).

Following review of Defendant's response (Doc. No. 55) to the first motion for sanctions filed by Plaintiffs (Doc. No. 35), the undersigned recommended that the motion be granted, in part, finding that Defendant "has acted intentionally, in bad faith, and for oppressive reasons [footnote omitted] in his communications with counsel, counsel's firm and in publishing the inappropriate and defamatory statements about counsel to others with the intent of trying to extort a litigation advantage, and that this conduct violates the federal and local rules regarding the obligation of civility to other litigation participants [footnote omitted]" (Doc. No. 63). Although the Court found Defendant's conduct to be "reprehensible," it carefully evaluated the least severe sanction under the totality of the circumstances, as set out in the Report. The District Court adopted the recommendation of the undersigned, and Defendant was "admonished for his inappropriate conduct and advised that any future rudeness or disrespect to counsel or the Court will be met with more severe sanctions, including but not limited to the imposition of monetary sanctions, the striking of his pleadings and the entry of a default judgment against him and, if warranted, the institution of civil or criminal contempt proceedings." (Doc. No. 65).

Next, Defendant filed another summary judgment motion (Doc. No. 71), which was promptly denied (Doc. No. 74). Defendant moved for reconsideration (Doc. No. 77), which was also denied (Doc. No. 79), and Defendant moved to reconsider the Court's Order denying his motion to reconsider

---

[1]The Third Party Claim was deemed not viable on its face (Doc. No. 63, 65).

(Doc. No. 88). This, too, was denied (Doc. No. 90). Trying a new tack, Defendant also moved to transfer venue (Doc. No. 82), which was denied (Doc. No. 86).

Throughout, Defendant continued to be uncooperative with counsel, and Plaintiffs filed another motion for sanctions (Doc. No. 80). Defendant filed his Response and Objection to Plaintiff's Motion for Sanctions (Doc. No. 89). While this motion was pending, Defendant filed yet another motion for summary judgment (Doc. No. 92). The District Court promptly denied the motion, finding Defendant's arguments to be "patently frivolous" and noting that many of the arguments had already been rejected by the Court (Doc. No. 93). Defendant moved to reconsider (Doc. No. 94) and the Court denied same (Doc. No. 95). One day later, Defendant moved for summary judgment yet again (Doc. No. 98). It, too, was denied (Doc. No. 100). Defendant moved to reconsider (Doc. No. 106, which the Court denied (Doc. No. 107).[2]

In a Report and Recommendation to the District Court on the motion for sanctions (Doc. No. 102), the undersigned found that Defendant had acted willfully, knowingly, and in bad faith in violating Orders of the Court and the federal and local rules, and found that no lesser sanction would suffice to address the misconduct. It was recommended that the motion for sanctions be granted, and that Defendant's pleadings be stricken, and a default be entered. The District Court adopted the Report, granted the motion for sanctions, struck Defendant's Answer to the Second Amended Complaint, and granted a default against Defendant (Doc. No. 108). The Clerk entered default (Doc. No. 109) and the instant motion was filed and referred to the undersigned (Doc. No. 110). Defendant filed an objection/response (Doc. No. 111), and the undersigned held an evidentiary hearing (Doc. No. 119-120).[3] Upon careful review of the evidence and applicable law, it is **respectfully recommended**

---

[2]Defendant moved for permission to file a recusal motion (Doc. No. 103), which the Court denied (Doc. No. 104).

[3]The Court granted Defendant's motion to appear telephonically at the hearing (Doc. No. 115). While the motion was pending, Defendant moved the Chief Judge to recuse the undersigned, as well as the District Judge (Doc. No. 114). The Chief Judge issued an Order denying the motion, finding it to be "merely a continuation of Defendant's abusive

that the motion for entry of default judgment be **granted, in part, and denied, in part, as set forth herein.**

### Standards of Law

The effect of the entry of a default is that all of the factual allegations in the Complaint are taken as true, save for the amount of unspecified damages. Thus, if liability is well-pled in the complaint, it is established by the entry of a default. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). The United States Supreme Court has noted the difference between well-pleaded facts and conclusory allegations. In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.... A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' ... Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id*. at 1949 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the plaintiff is entitled to relief.'" *Id*. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). This analysis is equally applicable to a motion for default judgment. *See De Lotta v. Dezenzo's Italian Restaurant, Inc*., No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, 5 (M.D. Fla. November 24, 2009).

---

tactics." (Doc. No. 121).

Once liability is established, the Court turns to the terms of the judgment. Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." If unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise. Fed.R.Civ.P. 55(b)(1)-(2). Pursuant to Rule 55(b)(2), the Court "may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to: A) conduct an accounting; B) determine the amount of damages; C) establish the truth of any allegation by evidence; or D) investigate any other matter."

Thus, in order to enter a default judgment, the Court must find that an adequate showing has been made as to liability and the kind or amount of damages or other relief. In order to determine whether that showing has been made here, the Court must analyze the allegations of the Second Amended Complaint and the evidence presented.

### *Issues and Analysis*

According to the operative pleading, in or around November 2010, Ennis, an individual whom Maus had never met or heard of, came under the false impression that he or his company had been defamed on the David Maus VW North Google Maps website, which Maus denies (Doc. No. 58, ¶ 7). Ennis became angry and threatened to sue Maus for libel (*Id.* at ¶8). Through an individual claiming to be legal counsel, Ennis sent multiple threatening e-mails to counsel for Maus (*Id.* at ¶9). In these e-mails, the author claimed that "AIS" acquired multiple Internet domain names containing the names of Maus and Ornstein (*Id.* at ¶10). In further correspondence, the author identifies AIS as "God," "the person who owns SEO Orlando," and CEO@adoni.us.(*Id.* at ¶11).

Ennis goes by many aliases, and has, at various times, identified himself as "God" and Rabbi Sollog Adoni (*Id.* at ¶12). In e-mails from sollog@sollog.com, Rabbi Sollog Adoni claims he owns SEO Orlando, and signed one e-mail "S. Adoni a/k/a GOD a/k/a J. Ennis." (*Id.* at ¶13). At some

point Ennis, either anonymously or through one of his many aliases or fictitious business entities, knowingly purchased or acquired the following domain names despite having no legitimate business reason for doing so:

> http://www.davidmaus.org/
> http://www.davidmaus.info/
> http://www.davidmaus.net/
> http://www.davidmausripoff.info/
> http://www.davidmauslawsuits.info/
> http://www.davidmaustoyota.info/
> http://www.davidmaushyundai.info/
> http://www.davidmausvw.info/
> http://www.davidmausvolkswagen.info/
> http://www.davidmausscion.info/
> http://www.davidmauschevrolet.info/
> http://www.davidmauscardealer.info/
> http://www.davidmausfoundation.info/
> http://www.davidmausgolf.info/
> http://www.mausmediagroup.info/
> http://www.davidmaussucks.info/
> http://www.fuckdavidmaus.info/
> http://www.markornstein.com/

(*Id.* at ¶14).

To the extent the subject domain names were registered by a business entity, that entity was merely a shell or alter-ego of Defendant (*Id.* at ¶15). The domain names consist of the legal name of Maus and automobile dealerships in which Maus has ownership interests, including: David Maus Toyota, David Maus Hyundai, David Maus Volkswagen, David Maus Chevrolet, and David Maus Scion (*Id.* at ¶16). One of the domain names contains the legal name of Ornstein (*Id.* at ¶17). Maus's name is distinctive and famous as a result of Maus's ownership interests in several automobile dealerships throughout Central Florida over the past several years. Maus regularly appears in television advertisements for the dealerships (*Id.* at ¶18). As a result of his appearances in these television commercials, and having his name on the dealerships, Maus's name and likeness are representative of and associated with the dealerships (*Id.* at ¶19).

Ennis has no intent to use the domain names for any bona fide purpose in the offering of any goods or services, nor has he ever used the names for any bona fide purpose (*Id.* at ¶20). Ennis has demanded a financial settlement from Maus related to the registration of the domain names (*Id.* at ¶21). Ennis has threatened to publish information about Maus to the media if settlement cannot be reached. Upon information and belief, such information would be false and defamatory (*Id.* at ¶22).

By operation of the default, the Court takes these well pleaded allegations as true.

The Second Amended Complaint sounds in four counts: Count I – Violations of the Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d); Count II – Injunctive Relief; Count III – Invasion of Privacy/Unauthorized Appropriation of Name; and Count IV – Cyberpiracy Protection for Individuals under 15 U.S.C. § 8131. Each is analyzed below.

**Count I**

The Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d), provides, in relevant part, as follows:

d) Cyberpiracy prevention

(1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person–

(I) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that–

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

(III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

(B)(I) In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to--

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

(ii) Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

(C) In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

15 U.S.C.A. § 1125(d).

Plaintiffs allege that a default judgment is due under this Act as Ennis registered the domain

names in bad faith, with full knowledge that his use of the names was unlawful;

is not using the names for any bona fide commercial or non-commercial purpose; and has used his acquisition of the domain names to threaten Maus and demand monetary payments from Maus (Allegations 25-27). While the Court finds more than sufficient evidence of bad faith, this section only applies if Plaintiffs' names are entitled to trademark protection. The Court finds "David Maus" is, and, on this record, "Mark Ornstein" is not.

As noted above, Section 1125(d) provides a cause of action to the "owner of a mark, including a personal name which is protected as a mark. . .". As Judge Presnell has previously noted, a plaintiff must demonstrate that his name is protected as a trademark under the Lanham Act to succeed with a claim under § 1125(d). *Salle v. Meadows,* No. 07-cv-1089, 2007 WL 4463920, 2 (M.D. Fla. December 17, 2007). Here, there was testimony that "David Maus" is, in fact, a mark; Maus is a partner in the business that owns the trademark; and Maus has licensed the use of his name to various car dealerships. As such, Maus has standing to bring this action.

There was no showing that "Mark Ornstein" is a registered mark, nor that it is entitled to protection as a common law mark. "Names—both surnames and first names—are regarded as descriptive terms and therefore one who claims federal trademark rights in a name must prove that the name has acquired a secondary meaning." *Tana v. Dantanna's,* 611 F.3d 767, 774 (11th Cir. 2010) (internal citations omitted). "Secondary meaning is the connection in the consumer's mind between the mark and the product's producer, whether the producer is known or unknown." *Ambrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1536 n. 14 (11th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987). The factors to consider in determining whether a name has acquired secondary meaning are: (1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture. *Conagra, Inc. v. Singleton*, 743

F.2d 1508, 1513 (11th Cir. 1984). Ornstein has presented no evidence on any of these factors. Absent any proof that the name Mark Ornstein is either a registered mark or is otherwise entitled to protection under this section, the Court cannot find that liability has been established on this count, with respect to Ornstein's claim.[4]

As to Maus' claim, the record shows that Defendant, with bad faith intent to profit from the mark, registered, trafficked in, and used the domain names incorporating the mark, without any reasonable grounds to believe such use was a fair use or lawful. The pleadings allege and the docket reflects Defendant's control of AIS, the claimed registrant of the offensive domains. Plaintiffs have also pled that there was no bona fide commercial or non-commercial purpose to the registration or use of the subject domain names; and that Defendant has used his acquisition of the domain names to threaten Maus and demand monetary payments from Maus (Allegations 25-27). As Defendant is in default, the well pled allegations of the operative complaint are accepted as true. Moreover, at hearing, Mr. Ornstein identified Defendant's voice as the same voice that called and made the threats. The registrations were purchased under Defendant's shopper ID, and there was evidence that the domains were purchased with Defendant's credit card.[5] The Court finds that liability has been established as to the claims with respect to the domain names incorporating "David Maus."

_____

[4]In so finding, the Court is only noting that Ornstein has failed to show that he has rights in his name that are enforceable under this section. The Court recognizes Ornstein's right to use his own name and take advantage of his personal reputation and goodwill. *See Societe Vincole De Champagne v. Mumm*, 143 F.2d 240, 241 (2d Cir.1944) ("To prevent all use of [a person's personal name] is to take away his identity; without it he cannot make known who he is to those who may wish to deal with him; and that is so grievous an injury that courts will avoid imposing it, if they possibly can.").

[5]Defendant's assertions at hearing that he was not involved in the registration of the subject domains is foreclosed by the default. Even if the Court were to consider the defense, it was throughly rebutted by the substantial evidence at hearing. The evidence indicates that Defendant used a fictitious name to register the subject domains, personally made the threatening calls, sent the threatening communications, caused the registrations to occur, and paid for same with his credit card.

As for the remedy, as set forth above, the Act provides that the Court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark. Section 1125(d)(1)(C). Additionally, Title 15 U.S.C. § 1117(d) provides:

> In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

As Maus has elected statutory damages in his motion, the Court **respectfully recommends** that the motion be **granted** on this count, as to Maus' claim, and that the Court order the forfeiture or cancellation of the domain name, and award Maus statutory damages in the amount of $17,000.00 ($1,000 for each domain).

### Count II

In this count, Plaintiffs seek injunctive relief, without specifying any underlying statutory or common law authority for same. Injunctive relief, generally speaking, is a remedy, not a cause of action. *See, e.g., Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1098 (11th Cir. 2004) ("[A] traditional injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed...."). In the "wherefore" clause for this count, Plaintiffs request that "this Court enjoin Defendant . . . from continuing to possess and control the above-referenced domain names, and order Defendant to forfeit or transfer to Plaintiffs the above-described domain names and any other domain names containing Plaintiffs' legal names, and pay civil penalties to Plaintiffs, and award attorneys' fees and costs under 15 U.S.C. § 1117(a), and grant such other relief as this Court deems just and proper." (Doc. No. 58 at p. 8). As this relief is essentially the same as that sought in Count I, and Plaintiffs offer no authority (or even argument)

sufficient to support a judgment on this count in their motion,[6] it is **respectfully recommended** that the motion be **denied** as to this Count, as the Count fails to state a cause of action and the relief sought is duplicative of that available and pled elsewhere in the pleading.

### Count III

Plaintiffs seek judgment in their favor on this Count, which purports to assert invasion of privacy/unauthorized appropriation of name, under state law. According to the allegations of the pleading, Ennis appropriated and is using without authorization the name of Maus and automobile dealerships in which Maus has an ownership interest, and the name of Ornstein (Doc. No. 58 at ¶42); Ennis is using the names through his registration of the above-described Internet domain names (*Id.* at ¶43); Ennis has published and displayed Maus's name and the name of his companies, and Ornstein's name, for illegitimate purposes without the express written or oral consent of Maus or Ornstein (*Id.* at ¶44); and Ennis has no legal right to use Maus's name or the name of his companies, or Ornstein's name, in the above-described manner (*Id.* at ¶45). According to the operative complaint, "Under Florida law Ennis must pay Maus and Ornstein a reasonable royalty, and punitive or exemplary damages," and Plaintiffs seek same. In the motion for entry of default judgment and proposed judgment, however, Plaintiffs do not cite any Florida law supporting this relief, and do not present any evidence or argument regarding the amount of a reasonable royalty or punitive and exemplary damages. Indeed, although Plaintiffs contend that "due to Defendant's default" a default judgment should be entered in favor of Plaintiffs and against Defendant as to Count III, the proposed judgment (Doc. No. 110-1) does not include any mention of royalties or punitive damages. While these allegations, taken as true, may support a claim under Florida law, as Plaintiffs have failed to

---

[6]The Court finds the motion for entry of default judgment to be wholly inadequate. The motion consists of conclusory assertions, without analysis of the operative complaint, controlling (or, indeed, any) case law, or even mention of the appropriate standard of review. As the motion was not sufficient to evaluate the appropriateness of the entry of judgment, the Court held an evidentiary hearing, as contemplated by Rule 55, at which point the record was supplemented to include the evidence and argument presented by both sides of this dispute.

identify the "Florida law" on which they rely and have presented no evidence as to royalties or punitive damages sufficient to support a default judgment even if they were entitled to same, the Court cannot find that judgment for Plaintiffs on this Count is appropriate. It is **respectfully recommended** that the motion be **denied,** with respect to this Count.

**Count IV**

Plaintiffs last assert a claim under 15 U.S.C. § 8131, Cyberpiracy Protection for Individuals, which provides, in part:

(1) In general

(A) Civil liability

Any person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person.
***
(2) Remedies

In any civil action brought under paragraph (1), a court may award injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name to the plaintiff. The court may also, in its discretion, award costs and attorneys fees to the prevailing party.

15 U.S.C. § 8131.

A violation of Section 8131 requires that the plaintiff demonstrate that the defendant (1) registered a domain name that consists of the name of the defendant, (2) did so without the defendant's consent, and (3) had the specific intent to profit from the defendant's name by selling the domain name for financial gain. *See Bogoni v. Gomez,* No. 11 Civ. 08093, 2011 WL 6957599, 3 (S.D. N.Y. December 28, 2011). From the foregoing and the evidence of record, both Plaintiffs are entitled to judgment on this Count. *See* Doc. No. 78-2 (email demanding thousands of dollars from Plaintiffs and noting that AIS, Defendant's alter ego, "will turn over any domains if a prompt settlement is

-15-

made."). Although Defendant argued at hearing that the monies demanded were owed due to the Plaintiffs "libel" of AIS, this contention is of no moment. As Judge Presnell has recognized in a similar context, "cyber-extortion is not a permissible way to recover a debt." *Salle*, supra, 2007 WL 4463920, 2.

The statute provides for injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name to the plaintiff, and also allows for an award of costs and attorneys fees to the prevailing party. In view of the egregiousness of the conduct here, as detailed above and at hearing, the Court finds an award of costs and attorneys fees to be appropriate, and the Court should reserve jurisdiction to award same, upon appropriate and timely motion. The Court thus **respectfully recommends** that the motion be **granted, as to this Count.**

### Conclusion

For the reasons set forth above, it is **respectfully recommended** that the motion be **granted, in part and denied, in part, and that judgment be entered consistent with these recommendations.** As the recommendation of the Court differs from the relief sought in the motion, the Court does not recommend that the Court enter the proposed judgment tendered by Plaintiffs (Doc. No. 110-1).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on March 16, 2012.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy